UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| L.P., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:10-cv-1309-TWP-TAB |
| ) | |
| COMMISSIONER, INDIANA STATE ) | |
| DEPARTMENT OF HEALTH, in his official ) | |
| capacity, ) | |
| ) | |
| Defendant. | |

## ENTRY ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

This case concerns the rights of United States citizens; children born in Indiana, vested with inalienable rights by the United States Constitution, who wish to become legitimized through paternity affidavits. This entry memorializes the Court's ruling from the bench issued at the preliminary injunction hearing held January 27, 2011.

The parties stipulated to the facts of this dispute, which streamlined the hearing significantly. For the sake of economy, the Court has included a condensed factual background.

## I. BACKGROUND

Indiana Code § 16-37-2-2.1 ("the Statute") became law in 1995. The statute provides a procedure – specifically, a paternity affidavit – establishing paternity for children born out of wedlock. Subsection (e)(4) of the Statute provides that the paternity affidavit must contain "[t]he Social Security number of each parent." Prior to July 10, 2010, however, the Commissioner of the Indiana State Department of Health ("Commissioner") accepted affidavits missing social security numbers, assuming all other statutory requirements were met. On July 10, 2010, the State Registrar, an employee of the Indiana State Department of Health,

unilaterally implemented a "new" interpretation of the Statute. There was no change in the law or other event which triggered the "new" interpretation. Since July 2010, the Commissioner has refused to accept paternity affidavits missing social security numbers ("Commissioner's interpretation"). Consequently, children born to a parent without a social security number – typically because of the parent's immigration status – cannot be legitimized through the procedure contemplated by the Statute. L.P. and D.R. ("Plaintiffs"), the class representatives in this class action, are two such children. Plaintiffs have challenged the constitutionality of the Commissioner's interpretation under the 14th Amendment arguing that it denies this class of children, United States citizens born in the State of Indiana, the right to be legitimated via paternity affidavit because of their parents' immigration status. Plaintiffs have argued that this interpretation violates both the Equal Protection Clause and the Due Process Clause. However, their argument is largely premised on the Equal Protection Clause.

## II. LEGAL STANDARD

Plaintiffs' Motion for a Preliminary Injunction is currently before the Court. For purposes of a preliminary injunction, plaintiff has the burden of establishing:

(1) A reasonable likelihood of success on the merits;

(2) No adequate remedy at law exists; and

(3) It will suffer irreparable harm if the injunction is not issued.

*See, e.g.*, *Kellas v. Lane,* 923 F.2d 492,493 (7th Cir. 1990)(emphasis added). The present battle is primarily waged on factor (1). If the moving party meets its burden, then the Court must balance, on a sliding scale, the irreparable harm to the moving party against the harm an injunction would cause to the opposing party (i.e. the balance of harms). *See id*. From there, the

Court must consider whether the injunction will harm the public interest. *Id*.

### III.  DISCUSSION

**A.     The Equal Protection Clause**

The 14th Amendment provides, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."   The Supreme Court has stated that the Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citations and internal quotations omitted).

**B.     Reasonable Likelihood of Success**

The Court begins its analysis by assessing the classification at issue to determine how stringently to scrutinize the Commissioner's interpretation.  Given that Plaintiffs' crucial characteristic – the immigration status of their parents – is immutable, the classification of Plaintiffs is akin to classifications based on alienage, race, gender, or illegitimacy.  For this reason, some scrutiny more discerning than rational basis is warranted.

On this point, the Supreme Court's decision in *Oyama v. California*, 332 U.S. 633 (1948) is instructive.  *Oyama* involved a California law that created burdens on land transfers between Japanese fathers and U.S. citizen sons that did not exist for other land transfers between all other fathers and sons.  The Supreme Court held that the law discriminated against the children on the basis of their parents' nationality, thereby striking it down on Equal Protection grounds. *Id*. at 644 ("The only basis for this discrimination against an American citizen . . . was the fact that his father was Japanese and not American, Russian, Chinese, or English.").  In doing so, the Court

appeared to employ strict scrutiny, stating: "In our view of the case, the State has discriminated against [the American citizen son]; the discrimination is based solely on his parents' country of origin; and there is absent the compelling justification which would be needed to sustain discrimination of that nature." *Id*. at 640 (emphasis added). In the Court's view, *Oyama* is sufficiently on-point, meaning that strict scrutiny is warranted.

Assuming *arguendo* that strict scrutiny does not apply, intermediate scrutiny is warranted. The Court finds support for this proposition in *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164 (1972), where the Supreme Court employed intermediate scrutiny to strike down a Louisiana law discriminating against unacknowledged illegitimate children for purposes of recovering workers compensation benefits following a parent's death. In its ruling, the Court emphasized, "no child is responsible for his birth and penalizing the . . . child is an ineffectual – as well as an unjust – way of deterring the parent." *Id*. at 175. Extrapolating from *Weber*, the Court believes that intermediate scrutiny is warranted where, as here, the classification is based on circumstances beyond the individual's control. Case law outside of the Supreme Court reinforces this position. *See, e.g., Lewis v. Thompson*, 252 F.3d 567, 589-92 (2d Cir. 2001).

In the end, however, the question of elevated scrutiny is more academic than pragmatic, given that the Commissioner's interpretation cannot pass constitutional muster under the deferential rational basis standard. Under rational basis scrutiny, the classification must only be *rationally related* to a *legitimate government interest*. *See, e.g., R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 406 (1992). The Commissioner posits two separate rationales for its interpretation.

First, the Commissioner argues that the new interpretation is necessary to comply with

4

federal law – specifically, Title IV-D of the Social Security Act, codified at 42 U.S.C. §§ 651-669B – and, in turn, to continue receiving federal funding. Specifically, § 652(a)(7) states that "the minimum requirements of an affidavit to be used for the voluntary acknowledgment of paternity . . . shall include the social security number of each parent." This argument fails for myriad reasons. Most notably, the Commissioner's "new" interpretation ignores the federal government's interpretation of its own statute. That is, the Department of Health and Human Services, in Policy Interpretation Question 97-04 stated, "[42 U.S.C. § 652(a)(7)] specifies that the social security number of each parent is one of the minimum requirements of an affidavit to be used for the voluntary acknowledgment of paternity. <u>However, the omission of one or both of the social security numbers does not invalidate the acknowledgment</u>." Moreover, prior to the new interpretation, implemented on July 1, 2010, the Commissioner had for years accepted affidavits missing social security numbers, assuming other statutory criteria were met. No evidence suggests that this old interpretation jeopardized Defendant's continued receipt of federal funding. Finally, the Commissioner's own internal policies are inconsistent, perhaps even incoherent. At oral arguments, the Commissioner admitted that, despite a similarly-worded statute addressing putative father registry forms, it inputs data from such forms, even when the forms are missing social security numbers.

The second rationale offered by the Commissioner is that the new interpretation is necessary because social security numbers "provide the State with a reliable identifier by which to find and track the child's parents, if necessary, to enforce child support obligations." This reasoning rings hollow. In effect, the Commissioner is arguing that not establishing paternity at all is somehow preferable to establishing paternity if the affidavit is missing a social security

5

number. Given that the overarching purpose of the law in this area is to establish paternity and enforce support obligations, this justification defies common sense. Where the choice is between establishing paternity at birth without the parents' social security numbers and not establishing paternity at all, only the former choice will further the state's interests. Further undercutting the Commissioner's position, at oral arguments, the Commissioner conceded that it does not – indeed, it cannot – perform a check to ensure that the furnished social security number is accurate.

It is undisputed that one purpose of the paternity affidavit statute is to make the paternity process simple. At bottom, the Commissioner's interpretation erects impenetrable roadblocks to being legitimated via paternity affidavit for Plaintiffs. Regardless of the level of scrutiny employed, Plaintiffs stand to prevail on their Equal Protection Clause claim.

**C.      Adequate Remedy at Law, Irreparable Harm, & Balance of Harms**

The Court finds that Plaintiffs have carried these burdens. This is a straightforward analysis, given that the denial of constitutional rights is irreparable harm in and of itself. *See, e.g., Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002). And, more practically, Plaintiffs will continue to bear the consequences of the Commissioner's new interpretation by being denied child support, visitation, custody, and inheritance rights. To counter the latter position, the Commissioner emphasizes that in lieu of paternity affidavits, Plaintiffs could be legitimized through the Indiana court system. However, as the Court well knows, the process of navigating this sometimes maddening world is, to put it charitably, burdensome.

For these reasons, the balance of harms cuts in Plaintiffs' favor. The Commissioner, on

the other hand, bears little risk of harm.  Presumably, the Commissioner can restore the former interpretation with little or no hiccups.  If it can change its policy once, then it can do it again.

**D.     Public Policy**

Last, the Court finds that the public interest will be served by granting the preliminary injunction.  Vindication of constitutional freedoms is in the public interest. *McIntire v. Bethel School*, 804 F. Supp. 1415, 1429 (W.D. Okl. 1992).   Moreover, legitimizing children is paramount.  It goes without saying that it, too, is in the public interest.

### IV. CONCLUSION

For these reasons, Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 25) is **GRANTED** and the injunction will issue without bond.  More specifically, for now, the Commissioner is required to reverse course and employ its former interpretation of the Statute utilized prior to July 10, 2010.

SO ORDERED:   01/27/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**Adam Clay**
INDIANA ATTORNEY GENERAL
Adam.Clay@atg.in.gov,badamclay@gmail.com,anne.dufour@atg.in.gov

**Kenneth J. Falk**
ACLU OF INDIANA
kfalk@aclu-in.org,kkendall@aclu-in.org,jmensz@aclu-in.org

**Jason A. Flora**
EPSTEIN COHEN DONAHOE MENDES & SEIF
jason.flora@gmail.com,flora_jason@hotmail.com

**Betsy M. Isenberg**
INDIANA OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov,Victoria.Hoffman@atg.in.gov

**Jill Z. Julian**
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov,pearlie.wadlington@usdoj.gov

**Peter Jon Prettyman**
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com,docket@taftlaw.com,pkeener@taftlaw.com

**Gavin Minor Rose**
ACLU OF INDIANA
grose@aclu-in.org

**Abigail Lynn Seif**
EPSTEIN COHEN DONAHOE & MENDES
abbyhur@aol.com

**Geoffrey G. Slaughter**
TAFT STETTINIUS & HOLLISTER LLP
gslaughter@taftlaw.com,docket@taftlaw.com,pkeener@taftlaw.com

**Nathan Michael Swinton**
UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION
nathan.m.swinton@usdoj.gov